

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-25-2005

# Parsons Energy v. Williams Union

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2171

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Parsons Energy v. Williams Union" (2005). *2005 Decisions.* Paper 1318.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1318

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No. 04-2171

PARSONS ENERGY & CHEMICALS GROUP, INC.,
Formerly Parson Process Group Inc.,

Appellant

v.

WILLIAMS UNION BOILER,
A DIVISION OF WILLIAMS POWER CORP.

_____

On appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court Civ. No. 03-3168
District Judge: Hon. Clifford S. Green

_____

Argued April 1, 2005
_____

Before: ALITO, SMITH, and FISHER *Circuit Judges*

(Filed:  April 25, 2005)

_____

Counsel:     Kathleen Olden Barnes (Argued)
             Justin Hawkins
             Watt, Tieder, Hoffar & Fitzgerald, LLP
             8405 Greensboro Drive, Suite 100
             McLean, Virginia 22102

             Lawrence D. Berger
             Ballard Spahr Andrews & Ingersoll, LLP

1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
*Attorneys for Appellant, Parsons Energy & Chemicals Group, Inc.*

D. Lynn Whitt (Argued)
Pollack & Whitt, P.C.
3783 Rider Trail South
St. Louis, Missouri 63045-1114

Joseph A. Battipaglia
Duane Morris LLP
One Liberty Place
Philadelphia, Pennsylvania 19103
*Attorneys for Appellee, Williams Union Boiler, A Division of Williams Power Corp.*

_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge*.

This appeal requires this Court to determine whether an arbitration award confirmed by a district court was issued in manifest disregard of the law or was irrational. Parsons Energy and Chemicals Group, Inc. (Parsons) appeals the decision of the District Court for the Eastern District of Pennsylvania declining to vacate an arbitration panel's award of a contractual incentive fee, as well as attorneys' and expert fees, to Williams Union Boiler (Williams), Parsons's subcontractor. We will affirm.

## II. Facts and Procedure

### A. Facts

In 1997, Parsons entered a contract with Motiva Enterprises, LLC (Motiva) to

build a gasification power system for a refinery in Delaware. In 1998, Parsons executed a fixed-price subcontract with Williams for construction and other services related to the gasification system. According to the subcontract, the parties shared equally the risk of delay – $100,000 per day in liquidated damages – in achieving the milestone dates laid out in the prime contract. A choice-of-law provision established that Delaware law controlled disputes arising under the subcontract.

In March 1999, the parties converted the subcontract to a cost-reimbursable format, with fixed incentive fees.[1] The amended subcontract, retroactive to December 8, 1998, provided that:

> [a]ll disputes between Contractor and Subcontractor arising under the Subcontract which cannot be resolved amicably between the parties shall be referred to the upper management of Subcontractor and Contractor for resolution. . . . If resolution is not achieved through mediation, the parties agree to submit the dispute to final and binding arbitration in accordance with the rules of the American Arbitration Association with proceedings conducted in the State of Delaware, USA or as otherwise agreed to by the Parties.

Rule 46 of the American Arbitration Association (AAA), which since has been renumbered, provides that an arbitrator's award may include "an award of attorneys' fees if all parties have requested such an award, or it is authorized by law or their arbitration agreement."

---

[1]There appears to have been no choice-of-law provision in the amended subcontract. The conversion documents explain, however, that unless specifically modified, "all terms and conditions of the original Subcontract shall remain in full force and effect." Apparently operating under this provision, the parties agree (as did the District Court) that Delaware law applies to the present dispute.

The amended subcontract also altered Williams's risk in the event of delay. The new risk terms were as follows:

> 2.3 LIQUIDATED DAMAGES (Schedule Incentive Fee)
>
> CONTRACTOR[2] agrees to pay a Schedule Incentive Fee as detailed in SECTION IV, unless CONTRACTOR fails to meet CONTRACTOR's Project schedule commitments associated with Liquidated Damage Dates, regardless of cause or fault including negligence on the part of any party or parties. In the event CONTRACTOR must pay any liquidated damages to COMPANY, CONTRACTOR and SUBCONTRACTOR expressly agree that the payment of the first $500,000 of any such liquidated damages shall be funded through SUBCONTRACTOR's forfeiture of its Schedule Incentive Fee for 100% of any and all such amounts paid to COMPANY. Thereafter, any additional amounts of Liquidated Damages paid by CONTRACTOR to COMPANY shall be funded on an equal basis with CONTRACTOR and SUBCONTRACTOR each contributing 50% of any and all amounts on the following basis:
>
> a) CONTRACTOR shall be responsible for the actual payment or allowance of credit to COMPANY for the full amount of the liquidated damages.
>
> b) SUBCONTRACTOR's share of such liquidated damages shall be funded through SUBCONTRACTOR's forfeiture of its Schedule Incentive Fee to the full extent required to pay such Liquidated Damages.
>
> c) SUBCONTRACTOR expressly agrees to waive any and all rights for claims to any Schedule Incentive Fee reduction imposed by CONTRACTOR to cover SUBCONTRACTOR's share of CONTRACTOR's

---

[2]"CONTRACTOR" refers to Parsons; "SUBCONTRACTOR" refers to Williams; and "COMPANY" refers to Motiva.

payment of liquidated damages regardless of cause.

d) Both parties understand and agree that the Liquidated Damage risk to be imposed against SUBCONTRACTOR's potential Schedule Incentive Fee is for an amount of $100,000 per day for failure to achieve any of the discrete events indicated below.

e) The maximum amount that SUBCONTRACTOR shall be required to contribute toward payment of said Liquidated Damages shall not exceed its total forfeiture of the above mentioned Schedule Incentive Fee.

. . . .

In turn, Section IV referred to above provided

B.4 SCHEDULE INCENTIVE FEE (maximum of $2,500,000)

CONTRACTOR shall pay SUBCONTRACTOR a Schedule Incentive Fee (SIF) based on the criteria outlined in Section O. If for any reason and without regard to fault by CONTRACTOR or others, CONTRACTOR has to pay Liquidated Damages to COMPANY, the amount of SUBCONTRACTOR's Schedule Incentive fee shall be reduced by 100% of the amount of such Liquidated Damage payments until such time as the total of $500,000 has been reduced and then SUBCONTRACTOR's Schedule Incentive Fee shall be reduced by 50% of any additional amount of any additional liquidated damage payments until such time as the total $2.5 million potential Schedule Incentive Fee has been reduced to $0.00. In no event will SUBCONTRACTOR's contribution to Liquidated Damages be other than the forfeiture of SUBCONTRACTOR's potential Schedule Incentive Fee.

In April 1999, Parsons and Williams accelerated their work in an attempt to achieve first feed of the gasifier by November 26, 1999, a milestone established in the Prime Contract. At Parsons's request, Motiva agreed to adjust the Prime Contract to

compensate for Parsons's increased costs caused by the acceleration.  Under that adjustment, Motiva extended the gasifier first feed date from November 26, 1999 to January 17, 2000 and promised to pay Parsons a $3 million bonus in exchange for settling certain pending claims and accelerating efforts to meet the gasifier first feed date.  For each day after January 17, 2000 that gasifier first feed was not achieved, Parsons would forfeit $100,000 of that bonus:

> Notwithstanding the provisions of Schedule "C," paragraph 1, it is hereby agreed that in the event Gasifier First Feed is achieved in accordance with the Contract on or before January 17, 2000, COMPANY shall pay a performance bonus to CONTRACTOR in the amount of Three Million Dollars ($3,000,000.00).  If Gasifier First Feed is not achieved by aforesaid completion date, then the performance bonus will be reduced at a rate of $100,000 per calendar day until the earlier of when Gasifier First Feed [is] achieved or February 16, 2000 when the bonus shall be reduced to $0 (hereinafter referred to as the "Bonus Forfeiture Period").  Any such bonus forfeiture shall satisfy any and all CONTRACTOR's obligation to COMPANY for Liquidated Damages for the associated calendar days during such Bonus Forfeiture Period.

Parsons did not achieve gasifier first feed until April 21, 2000, more than 90 days after the January 17, 2000 milestone date and well outside the Bonus Forfeiture Period.

When the gasifier was completed, Parsons and Motiva negotiated to resolve all outstanding disputes under the prime contract, including the amount of liquidated damages.  The parties memorialized their settlement in several documents, including an agreement called Change Order 90.  In relevant part, Change Order 90 provides:

6

> **LIQUIDATED DAMAGES** – Motiva and Parsons have agreed to a negotiated settlement for Parsons['s] aggregate liability to Motiva associated with Delay in Completion of the Schedule B-1 milestone Event First Feed to the Gasifier. The agreed payment to be made by Parsons to Motiva is for 45 days of Liquidated Damages at the Contract rate of $100,000 per day for a total of **$4,500,000**.
>
> **BONUS PAYMENT** – As consideration for Parsons['] considerable unplanned excess expense of overtime and shift pay etc. to try to achieve the Schedule B-1 Liquidated Damage Date for First Feed to the Gasifier, Motiva agreed to Bonus Payment of **$3,000,000**. It was further agreed that if the date was not met, this Bonus would be used to pay Motiva for the first 30 days of actual Liquidated Damages to be paid.

According to James Rogers, Parsons's contract administrator, pursuant to this language Motiva assessed Parsons $4.5 million in liquidated damages for 45 days of delay in completing the gasifier.

Whether Parsons paid Motiva $4.5 million in liquidated damages is a central factual dispute in this appeal. William Hall, a senior executive at Parsons, testified that Motiva gave Parsons a 30-day extension in its schedule. Williams's expert, Bradley Hornburg, denied that Parsons paid $4.5 million in liquidated damages to Motiva.

### B. Arbitration Award

In February 2003, the arbitration panel awarded Williams $1.5 million on its claim for the Schedule Incentive Fee and allowed Williams's claim for recovery of attorneys' fees and expert fees and expenses. In July 2003, the panel issued a supplemental award

specifying the amounts owed to Williams for attorneys' and expert fees.

### C. District Court Decision

In August 2003, Parsons filed a complaint in the U.S. District Court for the Eastern District of Pennsylvania to vacate the arbitration panel's award and supplemental award. Parsons argued that the panel manifestly disregarded the law in awarding Williams attorneys' and expert fees, and that the panel acted irrationally in awarding Williams the $1.5 million schedule incentive fee in light of the "undisputed" factual record that Parsons paid Motiva $4.5 million in liquidated damages.

In March 2004, the District Court held a hearing on Parsons' complaint at which it ordered Williams to provide evidence and/or citations to testimony appearing in the arbitration record related to the schedule incentive fee and Williams's claim for attorneys' and expert fees. In response, Williams filed a 150-page memorandum that included the above-excerpted documents.

On March 29, 2004, the District Court issued a memorandum, order, and judgment in Williams's favor. The Court noted that arbitration awards may be vacated where arbitrators exceed their powers or act in manifest disregard of the law, but that such review is "narrow in the extreme."

First, Judge Green determined that the arbitrators had an evidentiary basis for awarding $1.5 million of the schedule incentive fee to Williams. He noted that the panel "extensively questioned" Williams's expert witness, Bradley Hornburg, about the

contract, the liquidated damages provision of the subcontract, the actual liquidated

damages incurred, and Parsons's forfeiture of its bonus to Motiva. Judge Green observed

that Hornburg could not explain the 45 days of delay for which Parsons's claimed it was

charged $100,000 per day by Motiva. Judge Green concluded that given "the

consideration given by the Arbitration Panel to the interpretation of the Schedule

Incentive Fee provision of the converted subcontract, and the questioning of the

Defendant's expert witness, the record does not support a finding that [the] Arbitration

Panel [acted ultra vires] or in manifest disregard of the law."

Second, Judge Green ruled that the arbitrators did not manifestly disregard the law

in awarding Williams attorneys' and expert fees because Delaware law was unsettled on

that question. Judge Green acknowledged that the Delaware statute requiring arbitrators

to award attorneys' and expert fees, 6 Del. C. § 3509,[3] became effective after the

commencement of arbitration proceedings. Nevertheless, because the Supreme Court of

Delaware had not yet addressed whether the statute may be applied retroactively, Judge

Green concluded that the arbitration panel did not exceed its authority or manifestly

---

[3]The statute provides:

> Absent any agreements to the contrary between the parties, the
> arbitrator in any arbitration proceeding arising under this
> chapter shall award to the substantially prevailing party its
> reasonable attorneys' fees, arbitration costs, and expenses for
> expert witnesses.

6 Del. C. § 3509(b) (2005).

disregard the law.

Parsons timely appealed to this Court.

### III.  Analysis

### A.

Review of arbitration awards under the FAA is "extremely deferential."  *Dluhos v. Strasburg*, 321 F.3d 365, 370 (3d Cir. 2003).  Vacatur is appropriate only in "exceedingly narrow" circumstances, such as where arbitrators are partial or corrupt or manifestly disregard, rather than merely erroneously interpret, the law.  *Id.; Local 863 Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am. v. Jersey Coast Egg Prod.*, 773 F.3d 530, 553 (3d Cir. 1985) (stating that error of law is insufficient for vacatur).  So long as an award "draws its essence" from, *Local 863*, 773 F.3d at 553, i.e., "arguably construe[s] or applie[s]," the contract, the award must be upheld.  *News Am. Pub. v. Newark Typographical Union*, 918 F.2d 21, 24 (3d Cir. 1990).  In other words, there must be "absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of the award."  *Id*.  While "the courts are neither entitled nor encouraged simply to 'rubber stamp' the decisions of arbitrators," review of arbitration awards is "singularly undemanding."  *Matteson v. Ryder System Inc.*, 99 F.3d 108, 113 (3d Cir. 1996) (Becker, J.).[4]

---

[4]While the Federal Arbitration Act's standards apply to this dispute, the FAA does not create federal question jurisdiction.  *See Dluhos*, 321 F.3d at 367 (citing *Roadway Package Sys. v. Kayser*, 257 F.3d 287, 291 n.1 (3d Cir. 2001)).  The District Court exercised diversity jurisdiction in this case under 28 U.S.C. § 1332; we exercise jurisdiction over the District Court's

**B.**

1.     <u>Schedule Incentive Fee</u>

The parties agree that to have awarded Williams $1.5 million of the Schedule Incentive Fee, the arbitrators had to conclude that Parsons paid Motiva $1.5 million in liquidated damages, not the full $4.5 million contemplated in Change Order #90. The threshold question in this appeal, therefore, is whether there is any support at all in the record for that conclusion. *See News America*, 918 F.2d at 24. If there is any such support, then the award must be affirmed. *Id*.

The record contains some evidence to support the arbitration award. Williams's expert, Hornburg, testified that "Parsons paid a million-and-a-half dollars in LDs [(liquidated damages)]," i.e., not the $4.5 million it claimed to have paid. Additionally, Parsons's senior executive, William Hall, testified that Motiva granted Parsons a 30-day extension on its gasifier first feed date. Whether or not this Court would find such testimony relevant or credible, it cannot be said that there is "absolutely no support at all in the record justifying the arbitrator's determinations." *Id*. Accordingly, the District Court correctly declined to vacate the award of $1.5 million of the Schedule Incentive Fee.

2.     <u>Attorneys' and Expert Fees</u>

Both sides agree that if the arbitrators relied on § 3509 to award attorneys' and

_____

final order under 28 U.S.C. § 1291.

expert fees, they applied the statute retroactively. Parsons argues that the panel manifestly disregarded a leading Delaware case on retroactive application of statutory amendments, *Hubbard v. Hibbard Brown & Co.*, 633 A.2d 345 (Del. 1993). Williams responds that until the Delaware Supreme Court specifically ruled on the retroactive application of § 3509, the arbitrators could not have manifestly disregarded the law.

Parsons asks this Court to read too much into *Hubbard*, which explained that "a statutory amendment is remedial and may apply retroactively when it relates to practice, procedure or remedies and does not affect substantive or vested rights." 633 A.2d at 354. Because the rights at issue in *Hubbard* also were established by another statute, the court ruled that those rights were not substantive. *Id.* *Hubbard* thus suggests one approach to determining whether an amendment is remedial – whether another statute provides the same right. But *Hubbard* does not purport to establish the only approach to determining whether an amendment is remedial, and Parsons cites no cases holding that attorneys' and expert fees are a substantive right in Delaware. It is therefore plausible that the Delaware Supreme Court would determine that such fees are *not* a substantive right, and therefore § 3509 may be applied retroactively. At worst, the arbitrators wrongly applied *Hubbard*, but they did not manifestly disregard it.

### 3. Expert Fees

Parsons's fallback position is that the arbitrators awarded excessive expert fees

12

under Delaware law.[5] Williams labels this argument "confusing" and contends, in conclusory fashion, that Parsons cited cases that "have no bearing on the issue before this Court." The District Court does not appear to have addressed this argument.

Parsons argues that the arbitrators manifestly disregarded *Stevenson v. Henning*, 268 A.2d 872 (Del. 1970), and *Nygaard v. Lucchesi*, 654 A.2d 410 (Del. Super. Ct. 1994), both of which Parsons claims limit expert fees and expenses to the amount incurred for actual testimony. *Stevenson* interprets 10 Del. C. § 8906, which provides:

> The fees for witnesses testifying as experts or in the capacity of professionals in cases in the Superior Court, the Court of Common Pleas and the Court of Chancery, within this State, shall be fixed by the court in its discretion, and such fees so fixed shall be taxed as part of the costs in each case and shall be collected and paid as other witness fees are now collected and paid.

*Id*. *Stevenson* explains that "[w]itness fees allowed under § 8906 should be limited to time necessarily spent in attendance upon the court for the purpose of testifying. This does not include time spent in listening to other witnesses for 'orientation' or in consulting and advising with a party or counsel or other witnesses during the trial." 268 A.2d at 874 (citing *State v. 0.0673 Acres of Land*, 224 A.2d 598, 602 (Del. 1966)). *Nygaard* expresses the same principle positively, stating that "reimbursement for expert

---

[5]Parsons also argues that the arbitrators could not have awarded attorneys' fees under 6 Del. C. § 3506 because Parsons could not have been found to have acted in bad faith, which is required to award attorneys' fees under that statute. Because we conclude that § 3509, which requires the award of attorneys' and expert fees, arguably applied retroactively, we do not address whether the award of attorneys' fees could have been justified under § 3506.

testimony [under 10 Del. C. § 8906] encompasses deposition testimony which is introduced into evidence as well as trial testimony." 654 A.2d at 413 (citing Super Ct. Civ. R. 54(h)).

The question for this Court is whether the arbitrators manifestly disregarded *Stevenson*, *Nygaard* and § 8906 in awarding expert witness fees under § 3509 beyond those incurred for actual testimony. We hold that they did not. As *Stevenson* and *Nygaard* do not speak to § 3509, it is difficult to see how the arbitrators manifestly disregarded the law in awarding expert fees under that statute. Moreover, Parsons never explains why the established meaning of § 8906, Delaware's default rule for expert fees in litigation proceedings, controls the meaning of § 3509, Delaware's default rule for expert expenses in arbitration proceedings. And, indeed, the language of the two statutes is quite different. Section 8906 states that "fees for witnesses testifying as experts . . . shall be fixed by the court in its discretion." 10 Del. C. § 8906. In contrast, § 3509 requires an arbitrator to award to the substantially prevailing party its "reasonable attorneys' fees, arbitration costs and expenses for expert witnesses." 6 Del. C. § 3509. While Delaware courts appear not yet to have interpreted § 3509, a party's "expenses for expert witnesses" seems broader than "fees for witnesses testifying as experts," and arbitrators might interpret "reasonable" as affording more leeway in awarding expert fees than fees "fixed by the court in its discretion."

In light of the difference between § 8906 and § 3509, at worst the arbitrators

14

erroneously interpreted § 3509 with their award of expert expenses.  Accordingly, there is no ground for holding that the arbitrators manifestly disregarded the law.  *See Dluhos*, 321 F.3d at 370.

## V.  Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.